Anna Decker Dugan, Appellant, v. William Zurmuehlen et al., Appellees.

**DEDICATION:** Implied Dedication—Equivocal Evidence. An implied
1   dedication of land for a public way and an implied acceptance
    thereof by the public will not be decreed on evidence tending to show
    a very perfunctory assumption of jurisdiction over the land by the
    public authorities, plus a use which is as consistent, to say the least,
    with the theory of mere *permission* by the owner as with the theory of
    rightful public use. (See Book of Anno., Vol. 1, Sec. 6277.)

**HIGHWAYS:** Establishment—Prescription—Insufficient Evidence. A
2   public way by prescription will not be decreed on evidence which is
    just as consistent with the theory of the owner that whatever use was
    made of the land as a road was purely permissive as with the theory
    that the use was hostile, adverse, and under a claim of right. (See
    Book of Anno., Vol. 1, Sec. 4560, Anno. 21 *et seq.*)

Headnote 1: 18 C. J. p. 96. Headnote 2: 19 C. J. p. 964; 29 C. J. p. 393.

Headnote 1: 13 R. C. L. 35.

*Appeal from Des Moines District Court.*—Oscar Hale, Judge.

January 11, 1927.

Rehearing Denied July 1, 1927.

Action to enjoin the defendant from maintaining a fence on the center line of an alleged 16-foot public alley, arising, as claimed by plaintiff, either by implied dedication or by prescription. The trial court determined the equities to be in favor of the defendants. Plaintiff appeals.—*Affirmed.*

*Seerley & Clark,* for appellant.

*La Monte Cowles,* for appellees.

De Graff, J.—The material question involves the sufficiency of the evidence to establish a 16-foot alley between the plaintiff's lot and the land of the defendants. Plaintiff pleads dedication

1. DEDICATION: and prescription. The defendants traverse the
implied dedica- allegations, and allege the fact to be ''that the
tion: equivocal
evidence. said land for more than ten years last past has
been under fence and in possession and control of the defendants,
and said possession has been public, open, adverse, and hostile to
the plaintiff and to the whole world, and deny that any person
other than defendants has any right, title, or interest therein as
a public highway or otherwise.'' The decree of the trial court
causes plaintiff to become the appellant.

The factual geography indicating the *locus in quo* is shown
by the annexed drawing.

The defendants are the owners of the tract of land extend-
ing from Mt. Pleasant Street south to Lucas Avenue, and abut-
ting .643.87 feet on the west line of the alley in question. Ad-
joining this tract and abutting the east line of said alley 190.04
feet is plaintiff's Lot 31 of Moore's Subdivision of the city of
Burlington, Iowa.

It is conceded that defendant's land has been platted, and
is known as Starr and Cook Subdivision, but that said plat has
never been recorded in the office of the county recorder of Des
Moines County. It is also conceded that there never was any
platted alley upon any part of the land owned by the defendants,
but that the recorded plat of Moore's Subdivision shows an 8-foot
alley immediately west of the west line of said subdivision. It is
shown that, in 1856, prior to the platting and recording of
Moore's Subdivision, Henry Moore, the then owner of the land
in said subdivision, joined with the owners of land south of
Lucas Avenue in the dedication of an alley 16 feet wide, which
alley is between the subdivision and the land immediately west,
now owned by the defendants. The then owners of the land now
owned by the defendants did not join in the deed of dedication.

South of the defendants' property is a ravine, and on the
north side of Lucas Avenue the approach is quite steep, making
passage impossible.

In 1853 and in 1857, Lyman Cook and H. W. Starr became
seized of the tract of land now owned by the defendants. In
1867, one Peter Berens became the owner by deed from Cook and
Starr of part of the land in question, containing 4.53 acres, and
known as Hyde Park. Through mesne conveyances, the title in
1902 became vested in Frederick William Zurmuehlen, and upon

his death intestate in 1913, the instant defendants, as heir and widow, respectively, of the said Frederick William Zurmuehlen, became the title holders of this land.

Plaintiff and her ancestors have had title to Lot 31 since the early sixties. It is also shown that, sometime in the early sixties, and shortly after the attempted dedication of the 16-foot alley, a fence was constructed, presumably by the then owner of the land

now owned by the defendants. This fence was on the west line of the 16-foot alley in question, and the fence remained until it was destroyed by the process of time. In 1902, Frederick William Zurmuehlen constructed a new fence on a line 8 feet east of the original line fence, and it is this new fence that is provocative of the present action.

The theory of the plaintiff is that the defendants are ignoring the rights of the public in a 16-foot alley, and are obstructing the said alley, preventing the public from occupying and enjoying the use thereof for its full width. It is, in effect, a plea of public nuisance, "to the public damage generally, and of this plaintiff in particular."

This cause, reduced to final analysis, involves a dispute between abutting property owners on the alley in question,—the city not being a party. If the fence in question is in a public alley, as claimed, it constitutes an obstruction, and is, therefore, a nuisance, as defined by the statute.

It is important to observe that the east 8 feet constitute an alley by express dedication and acceptance, and with this strip we are not concerned. Is there a 16-foot alley, and, if so, for what legal reason? The question presented is one primarily of fact.

I. Our first inquiry is directed to the claim of implied dedication. The doctrine of dedication is based upon public policy and public convenience. It is analogous to the doctrine of equitable estoppel; and implied dedication, as a general rule, operates on this principle. *De Castello v. City of Cedar Rapids,* 171 Iowa 18; *Marratt v. Deihl,* 37 Iowa 250; *City of Dubuque v. Maloney,* 9 Iowa 450.

A dedication is often spoken of as operating by way of grant, but it differs therefrom in this particular: that there need not be a grantee *in esse* at the time of the dedication, to give it effect.

The distinction between statutory and common-law dedication is that the former operates by way of grant, and the latter by way of an estoppel *in pais.* Another distinction is that a right conferred by common-law dedication is an easement only; while in most statutory dedications, the fee of the property is in the municipality to which the dedication was made. The primary thought is that the right or title acquired by dedication

has its existence in the owner's consent, either actual or implied. The right or title acquired is not viewed as one by adverse possession, predicated on the assertion of title in hostility to that of the record owner. Whatever the nature of the declarations or acts relied upon to create a dedication, it is the universal holding that intention to dedicate (*animus dedicandi*) must exist. The act or acts must.be such that the intention may be inferred or the owner estopped from denying an intention to dedicate his property to the public use. *Jones v. Peterson,* 178 Iowa 1389; *Wensel v. Chicago, M. & St. P. R. Co.,* 185 Iowa 680. The intention must.be clearly and unequivocally manifested. *Bradford v. Fultz,* 167 Iowa 686; *O'Malley v. Dillenbeck Lbr. Co.,* 141 Iowa 186. This is true whether the dedication is claimed by acts *in pais* or by conveyance of record. The intent must be. unmistakable in its purpose, and the acts upon which the intent is predicated must be decisive in character. The substantial difference between express and implied dedication is in the mode of proof, but no writing or conveyance is necessary, to render a dedication effective. *Jochimsen v. Johnson,* 173 Iowa 553; *O'Malley v. Dillenbeck Lbr. Co.,* supra.

The statute of frauds is not applicable. The intent to dedicate may be established in any conceivable way, but the act or declaration must clearly evince the intent to dedicate. *Carter v. Barkley,* 137 Iowa 510.

A dedication, like a contract, consists of an offer and an acceptance, and there must be an acceptance. *Incorporated Town of Cambridge v. Cook,* 97 Iowa 599; *Town of Kenwood Park v. Leonard,* 177 Iowa 337; *De Castello v. City of Cedar Rapids,* supra.

Long acquiescence in user by the public may, under certain circumstances, operate as a dedication of land to the public use. As said in *Knight v. Heaton,* 22 Vt. 480:

"It is every day's practice to presume a dedication of land to the public use from an acquiescence of the owner in such use."

An offer of dedication, to bind the dedicator, need not be accepted by the city, but may be accepted by the general public. *Laughlin v. City of Washington,* 63 Iowa 652; 18 Corpus Juris 77, Section 73. To deny this would be to deny the whole doctrine of implied dedication.

The sufficiency of the evidence will depend, in a measure, on the character of the property claimed to be dedicated. *Manderschid v. City of Dubuque,* 29 Iowa 73; *Fisher v. Beard,* 32 Iowa 346; *Wilson v. Sexon,* 27 Iowa 15. However, a claimed dedication to public use is not to be presumed against the owner of the land, but must be established by acts and declarations of the owner of such a public and deliberate character as makes it generally known, and of no doubtful intention. Whatever presumption of intent to dedicate may exist, under the circumstances of any case, may be rebutted by circumstances incompatible with the supposition that a dedication was intended. The user is presumed to be permissive, and not adverse.

The ordinary rules of evidence, including the burden of proof, apply to dedication. The proof must be strict, cogent, and convincing, and the acts proved must not be consistent with any other construction than that of dedication; and the same rule applies to the acceptance of the dedication. *Morrison v. Marquardt,* 24 Iowa 35.

It has been held that stronger evidence is necessary to establish a local road than to establish a thoroughfare between towns. *Onstott v. Murray,* 22 Iowa 457; *Jackson v. State,* 6 Cold. (Tenn.) 532.

The theory of the law is, where proof of dedication rests upon user, that the essential intention existed at the beginning of the use, and continued through the whole period necessary to evince a conclusive dedication; and the user for the whole time of limitation must necessarily be of right. In other words, it must be something more than a mere license or merely permissive. In determining the lack of acceptance of dedication by user, sparsity of population and infrequency of travel may be considered. While the uninterrupted use and enjoyment of land as a road or highway by a limited number of persons for a sufficient length of time may establish a private right of way, it is manifest that no dedication or public easement would arise from such user. In order to acquire a public easement, the user must be by the public at large. *Bradford v. Fultz,* supra.

As bearing on the legal principles herein declared, see *Benjamin v. O'Rourke,* 197 Iowa 1338; *Cohen Bros. I. & M. Co. v. Shackelford Brick Co.,* 197 Iowa 674; *Kinsinger v. Hunter,* 195 Iowa 651; *Young v. Ducil,* 188 Iowa 410; *City of Valley*

*Junction v. McCurnin,* 180 Iowa 510; *Zollinger v. City of Newton,* 172 Iowa 352; *Griffith v. Murray,* 166 Iowa 380; *Barnes v. Robertson,* 156 Iowa 730; *Johnson v. City of Shenandoah,* 153 Iowa 493; *Menoher v. Incorporated Town of Gravity,* 148 Iowa 695; *State v. Welpton,* 34 Iowa 144; *Incorporated Town of Exira v. Whitted,* 140 Iowa 576; *Blennerhassett v. Incorporated Town of Forest City,* 117 Iowa 680; *Dodge v. Hart,* 113 Iowa 685; *State v. Birmingham,* 74 Iowa 407; *Baldwin v. Herbst,* 54 Iowa 168; *State v. Tucker,* 36 Iowa 485.

It must be conceded that whatever right the plaintiff has, arises from whatever right the public has. A public alley is involved. If the alley exists for the use of the public, it exists for plaintiff's use, and she cannot claim except through the public.

For the purposes of this case, we will not question the right of the plaintiff to institute a proceeding of this character; although, on the theory of public nuisance, as advanced by plaintiff, she must prove some special damage different in kind from that suffered by the general public. *Lytle Inv. Co. v. Gilman,* 201 Iowa 603.

Let us again turn to the facts. There is no showing that the city of Burlington ever exercised any dominion or jurisdiction over the west 8 feet of the alley in question, or that it was kept in repair by those whose duty, as officials, exacted the care of streets, highways, and alleys; nor was there ever any formal acceptance, by resolution or otherwise, on behalf of the city, of the 8 feet in dispute. As heretofore pointed out, the records of the city, in the platting of Moore's Subdivision, show an 8-foot alley, but the evidence fails to show that the defendants' ancestor signed the deed of dedication to the west 8 feet.

In 1905, three years after the new fence was constructed along the center line of the alleged alley, on complaint of the plaintiff's grantor to the city council of Burlington, the council ordered defendants' immediate ancestor in title to move the fence 8 feet west, and notice was served. Later, the council gave the then owner until the following spring, to comply with the order. No compliance was made, and 17 years later, to wit, September, 1922, the instant petition was filed by plaintiff.

It is also shown that in 1924 the city engineer of Burlington made a resurvey of this tract. He testified that no part of the

alleged alley was upon the defendants' land. The engineer also testified:

"Mt. Pleasant Street in front of the property is paved. There is a passageway eight feet wide from the paving to the alley. This paving was done last summer."

At that time, plaintiff made further complaint, and asked for a 16-foot opening; but, upon protest from Zurmuehlen, the engineer was instructed by the city to make it 8 feet wide, "which he did, and that is the way it is paved." It is apparent, therefore, that no claim of recognition has been made by the city to the east 8 feet of defendants' land, as a part of a public alley.

Does the assertion of long continued public user avail the plaintiff as the basis for her claim of implied dedication? What were the physical and other facts existing at the time that the first fence was constructed? The defendants' land, known as Hyde Park, in the early sixties was used as an amusement park, and the 8-foot strip in controversy was used in connection with the park. Later, a brickyard was maintained on the south part of this property by the owner, and the alley was used by the owner until the brickyard was discontinued, in the early eighties.

The alley was not a public thoroughfare, by reason of the inaccessible condition at the south end of Lucas Avenue. It was, in effect, a blind alley—a *cul-de-sac*. At the north line of Lucas Avenue, the alley is approximately 15 feet above the avenue, and from that point south the alley is impassable.

There is no evidence disclosing why the first fence was constructed, but it is a well recognized principle that mere permissive use of a way, no matter how long continued, will not amount to a dedication. The erection of the first fence is reasonably explainable on the theory that the then owner desired to serve his own interest and those of the public who had occasion to come upon his premises for reasons of business or pleasure. The probative force and conclusiveness of user must depend upon nature, extent, and the duration of the user, as well as the circumstances under which it occurs. The quest is to find available evidence indicating what the owner's real intention was; and unless the evidence, taken as a whole, satisfies the court that there was, in fact, an intention to dedicate, dedication is not established.

Who used the 8 feet in dispute, other than the then owner of the abutting land, except those who entered thereon by invitation or license of the owner? There were but two improved lots abutting the 8-foot alley on the east. Plaintiff's house fronts on Mt. Pleasant Street. Formerly, there was a small brick house, which was torn down when a new residence was constructed by plaintiff. There can be no serious claim that the present owner or her predecessor made use of the alley. She now desires to build a garage with opening upon this alley, and claims that the present 8-foot alley is not sufficient for exit. South of plaintiff, on a lot abutting on the east of said alley, there lived a gardener named Hartman. He had occasion to have delivered wood, coal, hay, and household necessaries. There is no showing of any claim of right (if such is necessary) to use the east 8 feet of defendants' land, by the plaintiff or any other person, until the new fence was constructed, in 1902; and since that time the strip in controversy has not been used, and has been continually fenced and cultivated.

It will be understood that none of the individual facts recited herein are conclusive in character, but all of them have more or less weight. There is no law or precedent defining with particularity what conduct is sufficient to establish an implied dedication or an acceptance by public user. We do not deny that public use is, in itself, some evidence of acceptance. Nor do we wish it to be understood that one who travels a street or a highway must do so asserting and declaring that he has the right to do so; but the use must be of such character, and attended with such circumstances, as to evince a claim by the public of the right to so use. *Cohen Bros. I. & M. Co. v. Shackelford Brick Co.*, 197 Iowa 674.

Upon a careful study of the record facts, we reach the conclusion that the trial court properly ruled the claim of implied dedication.

II. What merit has the doctrine of prescription in this case?

Prescription is an adverse holding under color of title or claim of right. Long user is an essential element of prescription. Dedication and prescription are distinguishable, in that dedica-

2. HIGHWAYS:
establishment:
prescription:
insufficient
evidence.

tion is estoppel by proof of an act of dedication, and also in the fact that dedication, whether express or implied, rests upon the consent of the owner. The adjudged cases with respect to highways by dedication or by prescription are not in all points susceptible of being reconciled. *Onstott v. Murray,* 22 Iowa 457.

Sufficient to state that, to create a highway by prescription, there must be continued, uninterrupted, adverse use, under a claim of right known to the owner, for the statutory period. All of these elements must be present.

"A right that starts permissively, and is not claimed as a right independent of permission, does not start the running of the statute." *Young v. Ducil,* 188 Iowa 410.

"It requires no citation of authorities to support the proposition that highway rights may be obtained by prescription. To support the right, however, it must be made to appear that the use has been adverse, continuous, and as of right, for the statutory period of limitation." *Brown v. Peck,* 125 Iowa 624.

The use and the claim of right must be concurrent and co-extensive. The use itself does not give rise to a presumption that the owner knew of it or of a claim of right. *Davis v. Town of Bonaparte,* 137 Iowa 196.

Where the original use of a strip of land by the public as a highway was permissive, there is no presumption that long continued use or possession thereof was under a claim of adverse possession. *Long v. Wilson,* 186 Iowa 834.

In the instant case, the plaintiff seeks to impeach, by parol testimony, a legal title regular on its face, and she must prove every point essential to her case by clear, satisfactory, and convincing evidence.

We will not further review the evidence. Whatever use the record discloses, if any, over defendants' land, and whatever knowledge any owner of defendants' land may have had of such use during the period of time in question, are as consistent with the claims and contentions of the appellees as with the interpretation given the competent facts by the appellant.

The decree of the trial court is—*Affirmed.*

EVANS, C. J., and STEVENS, VERMILION, and ALBERT, JJ., concur.